Bethlehem Steel Company, Appellant, *v.* Board of Finance and Revenue.

Argued May 24, 1967; reargued April 18, 1968. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*William H. Wood,* with him *Metzger, Hafer, Keefer, Thomas & Wood,* for appellant.

*George W. Keitel,* Deputy Attorney General, with him *William C. Sennett,* Attorney General, for Board of Finance and Revenue, appellee.

OPINION BY MR. JUSTICE JONES, August 6, 1968:

The question presented on this appeal is whether certain petitions seeking the refund of corporate net income taxes were *timely* filed with the Board of Finance and Revenue (Board) of the Commonwealth of Pennsylvania?

In *Bethlehem Steel Co. v. Board of Finance and Revenue,* 429 Pa. 84, 85, 86, 87, 239 A. 2d 389 (1968), we reviewed the pertinent facts: "For the years 1951 and 1952, Bethlehem Steel Company [Bethlehem] filed Net Income Tax Reports, paid the taxes computed in accordance with such reports and the Commonwealth

of Pennsylvania settled the taxes on such reported basis.

"On July 5, 1957, Bethlehem filed with the Board of Finance and Revenue [Board] petitions for a refund of the taxes paid in each of the two years. The basis of both petitions was that Bethlehem and the Commonwealth had erred in arriving at the amount of taxes due: (1) in the inclusion in the denominator of the gross receipts allocation fractions of *net profits* derived by Bethlehem from the sale and maturity of United States securities during 1951 and 1952 rather than the inclusion of the *gross proceeds* from such securities transactions; (2) in the inclusion in the numerator of the gross receipts allocation fractions of net profits from the sale and maturity of securities since neither the net profits nor the gross proceeds from such sources arose from any transaction of Bethlehem within Pennsylvania.

"On May 3, 1962, the Board denied Bethlehem's petitions for refund 'for lack of jurisdiction under Section 503 of the Fiscal Code in that the petition[s] [were] not timely filed.'

"On June 6, 1962, Bethlehem instituted in the Court of Common Pleas of Dauphin County an action of mandamus against the Board to compel it to grant the refunds. The Board filed an answer to this action of mandamus alleging that the court lacked jurisdiction to grant the relief sought by Bethlehem. The court below, being of the opinion that Bethlehem's remedy was by an appeal to this Court in the nature of a narrow certiorari, dismissed Bethlehem's complaint in mandamus."

On appeal, we held that, while a mandamus action was an inappropriate remedy to review a decision of the Board on refund petitions, nevertheless, since the instant action had been instituted prior to our decision in *Graybill and Bushong, Inc. v. Board of Finance and*

*Revenue*, 414 Pa. 70, 198 A. 2d 316 (1964)—which for the first time held mandamus inappropriate—and in order that Bethlehem secure a judicial review of the Board's action, the order of the court below should be vacated and a reargument held before our Court to determine whether the Board had properly refused to entertain Bethlehem's refund petitions.

By a 3-2 vote, the Board denied Bethlehem's refund petitions "for lack of jurisdiction under section 503 of The Fiscal Code in that the petitions were not *timely filed.*" (Emphasis added).

Section 503 of The Fiscal Code (Act of April 9, 1929, P. L. 343, §503, as amended, 72 P.S. §503) provides two different limitation periods for the filing of refund petitions such as presently involved. That section provides, inter alia: "§503. Refunds of state taxes, license fees, et cetera

"The Board of Finance and Revenue shall have the power, and its duty shall be, (a) To hear and determine any petition for the refund of taxes, license fees, penalties, fines, bonus or other moneys paid to the Commonwealth and to which the Commonwealth is not rightfully or equitably entitled and, upon the allowance of any such petition, to refund such taxes, license fees, penalties, fines, bonus or other moneys, out of any appropriation or appropriations made for the purpose, or to credit the account of the person, association, corporation, body politic, or public officer entitled to the refund. . . . *All such petitions for refund must be filed with the board within two years of the payment of which refund is requested, or within two years of the settlement in the case of taxes or bonus, whichever period last expired, except:* . . . .

"(4) *When any tax or other money has been paid to the Commonwealth, under a provision of an act of Assembly subsequently held by final judgment of a court of competent jurisdiction to be unconstitution-*

*al, or under an interpretation of such provision sub-
sequently held by such court to be erroneous.* In such
case, the petition to the board may be filed either prior
or subsequent to such final judgment *but must be filed
within five years of the payment of which a refund is
requested, or within five years of the settlement of
such taxes, bonus, or other moneys due the Common-
wealth, whichever period last expires.* The board shall
have jurisdiction to hear and determine any petition
for refund filed prior to such final judgment only if,
at the time of the filing thereof, proceedings are pend-
ing in a court of competent jurisdiction wherein the
claims of unconstitutionality or erroneous interpreta-
tion made in the petition for refund may be established,
and in such case the board shall not act upon the peti-
tion for refund until the final judgment determining the
question or questions involved in such petition has
been handed down." (Emphasis added.)

Under the provisions of that section, ordinarily, a
refund petition must be filed within two years of the
payment of the tax involved or the settlement of the
tax involved, whichever date is later, but, in other spe-
cial statutorily-delineated situations, a five-year pe-
riod is available dating from the payment of the tax
involved or the settlement of the tax involved, which-
ever date is later.

It is Bethlehem's position that its tax refund peti-
tions were *timely* filed within *both* the five year limita-
tion period and the two year limitation period.

## The Five Year Limitation Period

A reading of the applicable statutory provision re-
veals clearly a legislative intendment that taxpayers
who have paid Commonwealth taxes under a construc-
tion or interpretation of the taxing statute later deter-
mined to be erroneous by a court of competent juris-

diction should have an opportunity to retrieve the payment of such taxes. The statute affords a striking illustration of the exercise by the Commonwealth of its conscience and, in line with the legislative motivation, should be liberally construed.

When Bethlehem filed its reports of corporate net income for 1951 and 1952[1] it included in the gross receipts allocations fraction's denominator net profits from sales of securities rather than gross proceeds and it also included in the gross receipts allocation fraction's numerator net profits from the sale of securities which arose from out-of-state transactions. Such calculations were erroneous and, allegedly, the source of Bethlehem's errors was its construction of the taxing statute.[2]

The Commonwealth examined and settled Bethlehem's taxes for 1951 and 1952 on the basis shown in Bethlehem's reports and such settlement must have been based upon the Commonwealth's construction of the statute for we must assume that public officials properly perform their duties.

The Commonwealth presents a two-fold argument contra Bethlehem's position: (a) that for many years the courts[3] had interpreted the gross receipts allocations fraction's denominator as including the gross proceeds, rather than net profits, from the sale, redemption or maturity of securities,[4] therefore, there

---

[1] These reports were "self assessment" tax reports.

[2] As a result of these errors, Bethlehem overpaid the Commonwealth $188,883.92 for 1951 and $137,900.98 for 1952.

[3] *Commonwealth v. Storage Battery Co.*, 57 Dauph. 201, 214 (1946) ; *Commonwealth v. Eaglis Corporation*, 55 Dauph. 356, 365, 366 (1944) and 56 Dauph. 227 (1945). We need not consider whether the fact that these decisions dealt with "franchise taxes" rather than "corporate net income taxes" is of consequence.

[4] Commonwealth relies in this respect on *Com. v. Electric Storage Battery Co.*, 57 Dauph. 201, 214 (1946) and *Com. v. Eaglis Corp.*, 55 Dauph. 356, 365, 366 (1944), 56 Dauph. 227 (1945) (both franchise tax cases).

was "no interpretation" by Bethlehem which was subsequently held erroneous; (b) that the erroneous "interpretation" was unilateral on Bethlehem's part whereas the statute contemplates an erroneous "interpretation" bilateral on the part of both the Commonwealth and the taxpayer.

The Commonwealth's position is untenable. If, as the Commonwealth contends, the inclusion in the denominator of gross receipts rather than net profits had for many years been held to constitute a proper "interpretation" of the taxing statute, why then did the Commonwealth accept, by settlement, tax reports from Bethlehem which were at variance with what the Commonwealth now contends was the well-established "interpretation"? The Commonwealth places itself in sort of a dilemma; if the "interpretation" of the taxing statute was so well settled, the Commonwealth, by its settlement of Bethlehem's tax reports based upon another "interpretation" of the statute, permitted Bethlehem to overpay its taxes; on the other hand, if there was no such established "interpretation", then Bethlehem's "interpretation" later became erroneous only when this Court so declared such error in *Com. v. Koppers Company*, 397 Pa. 523, 156 A. 2d 328.

We need not determine whether the legislature intended that the erroneous "interpretation" had to be only on the taxpayer's part or mutual on the part of the Commonwealth *and* the taxpayer, since the instant record indicates that the instant "interpretation" was mutual on the part of both. When the taxpayer filed its reports, which later turned out to be erroneous, and when the Commonwealth settled with the taxpayer on the basis of such reports, the Commonwealth certainly not only accepted but agreed with the taxpayer's "interpretation". To hold otherwise is to impute to the Commonwealth a willingness to accept from the taxpayer overpayments of taxes which the Commonwealth

knew to be in excess of the taxes legitimately due. Such an imputation we will not draw.

As to the errors in the interpretation of the taxing statute concerning the inclusion of gross receipts rather than net profits in the denominator, we believe that such factual posture placed Bethlehem in a position to seek relief within the five-year limitation period of §503 and that the refund petitions were in this respect timely filed.

As to the capital gains from securities, Bethlehem in its tax reports took the position that such gains were gross receipts which should be included in both the numerator and the denominator of the allocation fractions and such "interpretation" was proper. However, when analyzed, Bethlehem's position is that these tax reports were erroneous because they included in gross receipts capital gains from transactions which took place outside Pennsylvania. Such errors arose not through an interpretation of the taxing statute but rather through Bethlehem's interpretation of where the transactions took place, within or without Pennsylvania; such "interpretation" is not within the purview of the five-year limitation period of §503(a)(4).

The inclusion of net profits rather than gross receipts in the allocation fraction's denominator resulted from an "interpretation" of the taxing statute which was later determined by this Court to be erroneous and the refund petitions in this respect were timely filed. However, since the alleged inclusion of capital gains in the allocation fraction's numerator resulted from Bethlehem's interpretation *of the facts,* i.e., whether the transaction from which such gains arose took place within or without Pennsylvania, rather than from an erroneous "interpretation" of the taxing statute, such situation is not covered by the five-year limitation period of §503(a)(4).

## The Two Year Limitation Period

Bethlehem does not claim that it should receive refunds of *all* the taxes but only a material part of such taxes if it be held that it cannot qualify under the five year and must rely on the two year period of limitation.

Bethlehem's petitions were filed July 5, 1957. On its 1951 tax account it had paid the following amounts: $135,394.86 on June 12, 1957 and $348.50 on February 8, 1962. On its 1952 tax account it had paid $94,877.83 on June 12, 1957.

The Commonwealth's position is that such payments were made by Bethlehem after settlement of Bethlehem's net income by the Federal taxing authorities and were paid in connection with "Reports of Change" in Bethlehem's net income to Commonwealth and, therefore, the Commonwealth contends that such payments were not made as the result of errors in the gross receipts allocations fractions contained in the 1951 and 1952 Tax Reports.

Bethlehem conceding the verity of the Commonwealth's position *factually,* nevertheless contends such payments fall within the statutorily-contemplated "payment" and that the practice before the Board had long recognized such payment. At the hearing in the court below, Bethlehem called a former Board docket clerk for 22 years who had been responsible for the assembly of information for consideration by the Board of refund petitions. This witness, testifying that to his knowledge the Board had never refused to recognize a payment of tax made into the tax account within the two year period even if such tax payment did not represent the same money sought to be refunded, stated: "This is the first time I ever heard of this one. We made refunds, as far as I can remember, on any money that was paid within the jurisdictional period,

regardless of any question. I never heard this question raised before. . . . Q. In other words, if there was a payment within the required period, be it one, two or five years, the board looked no farther if it had concluded that the petition was otherwise entitled to a refund and granted a refund up to the amount of such payment? A. That has been my understanding. Q. To your knowledge, that was the situation as existed during the fifteen years when you were attending board hearings and deliberations? A. That's right. I never heard that question raised."

The statutory two year period of limitation begins to run from the later of two dates—the date of *"the* payment of which refund is requested" or the date of settlement. Despite the testimony as to the practice of the Board, the statute seems clearly and unequivocally to specify that the "payment" of taxes which furnishes the starting point of the two year period must be *that payment of taxes* for which the refund is sought. *Such payment* and the settlement of taxes antedated the two year period of the statute and Bethlehem's petitions for refunds clearly were not filed within the two year period. Equitable principles cannot vary the statutory requirement and we lack the power to alter the explicit language of the statute.

In summary, we hold that: (1) as to the erroneous interpretation of the taxing statute concerning the inclusion of gross receipts rather than net profits in the allocation fraction's denominator Bethlehem's refund petitions were *timely* filed; (2) as to the errors of inclusions of capital gains in the allocation fraction's numerator Bethlehem's refund petitions were *not timely* filed; (3) Bethlehem's refund petitions were *not timely* filed within the two year limitation period of the statute.

The order of this Court vacating the order of the court below is reaffirmed and the matter remanded to

the Board for the entry of an order consistent with the views expressed in this opinion.

---

CONCURRING AND DISSENTING OPINION BY MR. JUSTICE COHEN:

The majority opinion carefully describes the background of this proceeding. What it omits, however, is critical. To obtain the benefit of the five-year limitation period, a taxpayer must point to a judicial determination *subsequent* to payment of the tax holding the applicable statute unconstitutional or its interpretation erroneous. Here, Bethlehem erroneously computed its gross receipts fraction by including *net* profits rather than *gross* proceeds in the denominator of the fraction; and the Commonwealth's taxing officers erroneously settled the tax on that basis. All this took place despite the fact that it was well known for a number of years that it was gross proceeds of securities sales that should be used. *Commonwealth v. The Electric Storage Battery Company,* 57 Dauph. 201 (1946); *Commonwealth v. Eaglis Corporation,* 55 Dauph. 356 (1944); Stradley & Krekstein, Corporate Taxation and Procedure in Pennsylvania (2d ed. 1952), 244-245.

Bethlehem's reliance on the 1959 decision of this Court in *Commonwealth v. Koppers Company, Inc.,* 397 Pa. 523, 156 A. 2d 328 (1959), to supply it with a "subsequent" decision is misplaced. The *Koppers* case dealt only with the propriety of including certain proceeds in the makeup of the fraction, not with the question of whether gross or net proceeds were to be used; in fact, it referred to the earlier cases noted above as holding that gross proceeds were the proper measure to be used when dealing with receipts from the sale of securities.

Therefore, despite the fact that the Commonwealth mistakenly accepted Bethlehem's erroneous reports and

thus received more tax than it was entitled to receive, it still remains that Bethlehem's right to a refund was cut off after two years since nothing subsequently occurred to extend the statutory period to five years. Hence, I dissent to that determination of the majority.

I am in agreement with the other determination of the majority. In holding that Bethlehem cannot rely upon payments made within two years of the filing of the refund petitions when such payments were made only as a result of changes in its federal net income, the opinion is clearly correct. Section 503(a)(1) of "The Fiscal Code" speaks of petitions for refund of taxes "the payment of which refund is requested." Surely, no refund here is requested of the additional taxes paid as a result of a change in federal net (now taxable) income; nor can I conceive of such a request since such a change is mechanical and raises no substantive issue. Furthermore, this conclusion is the only reasonable view of the matter in light of the time lag which may occur between the filing of a return and its settlement, on the one hand, and a federal audit and change on the other. This time lag may well stretch for ten years. I cannot conceive of then exposing the Commonwealth to all forms of refund claims following a report of change, such claims being based on issues unrelated to the report of damages. I would hold that the Board of Finance and Revenue properly denied Bethlehem's petitions for refund and lack of timely filing and affirm the Board's action.

---

CONCURRING AND DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I agree with all of the majority opinion except that section covering the applicability of the two year limitation period and am convinced that the taxpayer can prevail under the two year period. It is undisputed that Bethlehem made payments in 1957 for both 1951

and 1952 taxes and that it seeks to recover under the two year statute only up to the amounts paid in 1957.[1]

Although the refund statute clearly says that petitions will be entertained within two years "of the payment of which refund is requested," the majority concludes that this provision specifies "that the 'payment' of taxes which furnishes the starting point of the two year period must be *that payment of taxes* for which the refund is sought." (Emphasis in original.) Apparently, the majority has decided that the error upon which the refund is predicated must be causally connected with the payments involved and that, since the 1957 payments resulted from a change in Bethlehem's net income for federal tax purposes rather than a change connected with the alleged erroneously computed gross receipts allocation fraction, the requisite causal connection is lacking. I cannot agree for I can find no requirement in either our cases or the statute itself of a causal connection. Certainly, had the Legislature intended such a requirement, it could have easily so specified; the statute, however, employs the word "payment" unmodified by any requirement that the payment be connected to the error supporting the refund claim. The majority tells us that this statute "affords a striking illustration of the exercise by the Commonwealth of its conscience and, in line with the legislative motivation, should be liberally construed." If such is the case, I submit that a liberal construction (or, for that matter, even a grudging construction) impels the conclusion that the payment need not be connected to the alleged error.

---

[1] Vis-a-vis its 1951 tax liability, Bethlehem in April of 1952 paid $2,500,000 and in May of that year $1,800,000. It does not contend that it is entitled to a refund for 1951 overpayments greater than $135,743.36, the total amount it paid in 1957 and 1962. Nor could it for the 1952 payments are clearly well prior to two years before its refund action was instituted.

Although not discussed by the majority, the Commonwealth points to two cases as supportive of the majority's view—*Commonwealth v. Lukens Steel Company,* 402 Pa. 304, 167 A. 2d 142 (1961), affirming, 74 Dauph. Cty. Rep. 26 (C.P. 1959) and *Commonwealth v. Abrasive Company,* 60 Dauph. Cty. Rep. 409 (C.P. 1949). In both of these decisions, as in this litigation, the taxpayer's state tax liability was modified by virtue of a change in its net taxable federal income. However, in *Lukens Steel* and *Abrasive* the taxpayer contended that the change in its net taxable federal income allowed it to recompute all of the calculations employed to determine the allocation fraction. Since in both cases the time for resettlement had passed, we held that a wholesale resettlement of all calculations was not permissible. These cases do not hold, as the Commonwealth suggests, that a refund is not obtainable even though payments have been made within the two year period. In fact, if after the time for resettlement had passed[2] a refund could no longer be obtained, then the refund provisions would have no function for the limitations period would be that contained in the resettlement sections.

I conclude that up to the amounts paid in 1957 the taxpayer may be entitled to a refund, that the Board of Finance and Revenue should be directed to consider the merits of the entire refund claim and therefore dissent from that portion of the majority opinion holding that part of this refund claim is barred by the two year statute.

---

[2] The Act of April 9, 1929, P. L. 343, §1102, as amended, 72 P.S. §1102 (Supp. 1967) places a ninety day limitation on resettlement petitions.