000099A

**GREENWOOD GAMING AND
ENTERTAINMENT, INC.,**
Petitioner

v.

**COMMONWEALTH of Pennsylvania,**
Respondent.

Commonwealth Court of Pennsylvania.

Argued Sept. 13, 2011.
Decided Oct. 13, 2011.

Robert B. Hoffman, Harrisburg, for petitioner.

Clinton G. Smith, Jr., Senior Deputy Attorney General, Harrisburg, for respondent.

BEFORE: SIMPSON, Judge, and BUTLER, Judge, and QUIGLEY, Senior Judge.

OPINION BY Judge BUTLER.

Greenwood Gaming and Entertainment, Inc. (Greenwood) petitions for review of the October 23, 2009 order of the Board of Finance and Revenue denying its Petition for Review of Refund for Slots Gross Terminal Revenue. The issue before this Court is whether the value of cash and non-cash prizes distributed by Greenwood to patrons with Players Cards may be excluded from gross terminal revenue (GTR) because they are dispersed "as a result of playing a slot machine." For the reasons listed below, we affirm the order of the Board of Finance and Revenue.

Greenwood operates the Philadelphia Park Casino and Racetrack (Philadelphia Park). In casinos operated in the Commonwealth of Pennsylvania, including Philadelphia Park, the Department of Revenue (Department) has installed a central control computer system (CCS) that provides information to the Department about various financial events that occur during the operation of slot machines. According to the Department's regulations, the determination of GTR and the calculation of taxes and other assessments due to the Depart-

ment based upon slot machine play are determined based on the actual calculations made by the CCS.[1] The Pennsylvania Race Horse Development and Gaming Act (Gaming Act)[2] provides for several deductions from GTR, i.e., for awards such as cash or cash equivalents paid out to patrons, cash paid to purchase annuities to fund prizes, and any personal property, all of which are measured by the CCS. The CCS, however, only measures for the deduction of those payments made to patrons which are made within the algorithm of the slot machine, which results from a patron's physical operation of the slot machine.[3] Greenwood has requested that cash and non-cash prizes that it distributed to casino patrons in 2007 and 2008, but that were not recorded by the CCS, such as promotional items it distributes to patrons who hold Players Cards,[4] be included as allowable deductions.

Only Greenwood's patrons with a Players Card were eligible to receive the specific prizes at issue in this case. The eligibility criteria for some of the prizes required that a patron have his/her card inserted in a slot machine at the time the prize was awarded, or during other specified times. The eligibility criteria for other prizes were based on a patrons' prior gaming activity. In either event, the patrons were required to be on the casino premises at the time of the award or have been there during a specified period of time. All of the prizes were designed to improve the relationship between Greenwood and its patrons, with the ultimate goal of encouraging patrons to frequent the casino more often, to increase his/her gaming activity, and to promote the casino positively to others.

■ The prizes Greenwood seeks to deduct from GTR were distributed to patrons who are said to have won the prizes at issue in one of the following ways: 1) by having their Players Card inserted into a slot machine during a designated period or at a designated time; 2) by having entries deposited in and selected from a drawing drum by a computer using a random number generator; 3) by bringing to a specific place at the casino, usually the Players' Services Desk, a postcard or other mailer the casino had sent to a patron; or 4) by being a specific patron receiving them as part of what the casino would refer to as player development. Greenwood sought a refund of slot machine tax and local assessment fees under the Gaming Act, and filed a petition for review with the Department's Board of Appeals. The Board of Appeals denied Greenwood's petition on July 13, 2009, finding that the refund sought was not the direct result of a metered win from playing a slot machine. Greenwood timely appealed to the Board of Finance and Revenue (Board) which denied its appeal in an order mailed on October 23, 2009. Greenwood timely appealed the order of the Board to this Court.[5] The parties have filed a Stipula-

1. 61 Pa.Code § 1001.8(c)(1).

2. 4 Pa.C.S. §§ 1101–1904.

3. The phrase, payment made "within the algorithm of the slot machine," refers to a computer-established payout formula and methodology which provides awards to players as a result of physically operating a slot machine.

4. A Players Card is issued to a patron who signs up for it. The card, which is inserted in

a slot machine while a patron is playing a particular machine, identifies the patron to the casino's computer system, which stores data on that patron, including his/her gaming activity. Greenwood has several classifications of patrons based on their level of gaming activity—Regular, Premium and Elite.

5. "In appeals from decisions of the Board of Finance and Revenue, our scope of review is *de novo* and this Court functions as a trial court, even though such cases are heard in

tion of Facts to create the record in this matter. Greenwood filed a short supplement to the Stipulation.

Greenwood argues that the Board wrongly disallows cash and non-cash awards made to patrons who hold Players Cards because the Board determined that the prizes are won outside of the payout algorithms of the slot machines. It further argues that the statutory language does not include a limitation based on the algorithm of the game and the Department has no authority to impose one. In addition, Greenwood contends that it is unlikely that the legislature authorized an all-but-never-available deduction (i.e., an award of personal property made as a result of the algorithm of the game). Finally, Greenwood argues that the personal property exclusion to GTR explicitly excludes "comps" such as travel expenses, food, refreshments, lodging or services, and thus the statutory language confirms that all other awards of personal property made "as a result of playing a slot machine" are within the exclusion from GTR, and there is no basis to treat the prizes at issue any differently. We disagree.

■■■■ The Gaming Act defines GTR as: The total of:

(1) cash or cash equivalent wagers received by a slot machine minus the total of:

(i) Cash or cash equivalents *paid out to players as a result of playing a slot machine,* whether paid manually or paid out by the slot machine.

(ii) Cash or cash equivalents paid to purchase annuities to fund prizes payable to players over a period of time as a result of playing a slot machine.

(iii) Any personal property *distributed to a player as a result of playing a slot machine.* This does not include travel expenses, food, refreshments, lodging or services.

(2) cash received as entry fees for slot machine contests or slot machine tournaments.

The term does not include counterfeit cash or tokens; coins or currency of other countries received in slot machines, except to the extent that the coins or currency are readily convertible to cash; or cash taken in a fraudulent act perpetrated against a slot machine licensee for which the licensee is not reimbursed.

4 Pa.C.S. § 1103 (emphasis added). It is clear under the circumstances that there is ambiguity in the phrase "as a result of playing a slot machine." The Pennsylvania Supreme Court has held that language "is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Trizechahn Gateway LLC v. Titus,* 601 Pa. 637, 653, 976 A.2d 474, 483 (2009) (quoting *Ins. Adjustment Bureau v. Allstate,* 588 Pa. 470, 481, 905 A.2d 462, 468–69 (2006)); *see also Rendell v. Pennsylvania State Ethics Comm'n,* 603 Pa. 292, 983 A.2d 708 (2009). The Commonwealth Court interprets statutes and ascertains the intention of the legislature where statutory provisions are not clear and free from all doubt. *Pelter v. Dep't of Transp., Bureau of Driver Licensing,* 663 A.2d 844 (Pa.Cmwlth.1995); 1 Pa.C.S. § 1921(a).

In this case, it is first helpful to look at the definition of "slot machine." Section 1103 of the Gaming Act defines a "slot machine" as:

our appellate jurisdiction." *Air–Serv Grp., LLC v. Commonwealth,* 18 A.3d 448, 451 n. 3

(Pa.Cmwlth.2011).

Any mechanical, electrical or computerized contrivance, terminal, machine or other device approved by the Pennsylvania Gaming Control Board which, upon insertion of a coin, bill, ticket, token or similar object therein or upon payment of any consideration whatsoever, including the use of any electronic payment system except a credit card or debit card, is available to play or operate, the play or operation of which, whether by reason of skill or application of the element of chance or both, *may deliver or entitle the person or persons playing or operating the contrivance, terminal, machine or other device to receive cash, billets, tickets, tokens or electronic credits to be exchanged for cash or to receive merchandise or anything of value whatsoever, whether the payoff is made automatically from the machine or manually.* A slot machine:

(1) May utilize spinning reels or video displays or both.

(2) May or may not dispense coins, tickets or tokens to winning patrons.

(3) May use an electronic credit system for receiving wagers and making payouts.

The term shall include associated equipment necessary to conduct the operation of the contrivance, terminal, machine or other device.

4 Pa.C.S. § 1103 (emphasis added). The use of the phrase "play or operation" in the context of the definition of slot machine appears to refer to actual physical operation of a slot machine.

Further, all slot machines are required to be connected to the CCS. 4 Pa.C.S. § 1323(a). The CCS gives the Department overall control of slot machines to facilitate auditing and security programs critical to the integrity of slot machine gaming. *Id.* Casinos are required to ensure that each slot machine directly provides or communicates all required activities and financial details to the CCS. 4 Pa.C.S. § 1322(b)(3). Moreover, casinos are required to "[e]nsure that any financial event that occurs in the operation of a slot machine is recorded adequately to permit proper and timely reporting of gross revenue and the calculation thereof and of fees and taxes and to maintain accountability for assets." 4 Pa.C.S. § 1322(b)(6). The value of the prizes Greenwood wishes to deduct cannot be captured by the CCS because they are not the direct product of physical operation of a slot machine. It is reasonable to conclude, reading the Gaming Act as a whole, that the legislature only intended to allow deductions that could be recorded by the CCS. The fact that prizes won from physically operating a slot machine can be manually distributed to a winning patron is of no moment. *See* 4 Pa.C.S. § 1103 ("gross terminal revenue"). The actual winning of a prize from the physical operation of a slot machine would be recorded by the CCS regardless of how the prize was actually distributed.

The fact that there are specific items of personal property that are excluded from allowable deductions, i.e., travel expenses, food, refreshments, lodging or services,[6] is also of no moment. Again, the allowable deductions are prizes that are won as a direct product of physical operation of a particular slot machine, not just because the patron played a slot machine at some point in time. Since the Gaming Act allows prizes in the form of something other than cash or its equivalent, the specific exclusion of travel expenses, food, refreshments, lodging and services from allowable deductions indicates that those items could

---

**6.** 4 Pa.C.S. § 1103 ("gross terminal revenue"). Greenwood argues that because these items are specifically mentioned, all other items of personal property may be excluded.

not be deducted if they were given as prizes when a winning combination on a machine was achieved.

Greenwood is essentially asking this Court to include promotional items it distributes to its casino patrons as allowable deductions from GTR. Even though the patrons would not have been eligible to win any of the prizes at issue had they not played a slot machine at some point, it does not appear that the legislature intended such prizes to be deducted from GTR. Finally, the prizes awarded are more accurately described as resulting from one having a Players Card, not as resulting from simply playing a slot machine. We conclude, it is a more reasonable interpretation of the statute to state that "as a result of playing a slot machine" means "as a direct and immediate result of physically operating a slot machine." Therefore, the prizes at issue will not be included as allowable deductions from GTR.

For the reasons stated above, the order of the Board is affirmed.

### ORDER

AND NOW, this 13th day of October, 2011, the October 23, 2009 order of the Board of Finance and Revenue is affirmed.

Pursuant to Pa. R.A.P. 1571(i), any party may file exceptions to this Court's determination within 30 days from the date of this Order. Otherwise, judgment is entered in favor of Respondent.

DISSENTING OPINION BY Judge SIMPSON.

Because I disagree with the analysis and the result reached by the majority, I respectfully dissent. I would reverse the Board of Finance and Revenue and allow the deductions sought by Greenwood Gaming and Entertainment, Inc. (Taxpayer).

The case deals with deductions from taxable "gross terminal revenue" generated by slot machines. Essentially, the Taxpayer seeks deductions for specific, proven prizes to certain slot machine players which were distributed outside of the central control computer system.

I agree with the majority that the dispositive statutory language which addresses the deductions is ambiguous. I disagree, however, that, when faced with two reasonable interpretations of a taxing statute we should choose "a more reasonable interpretation." Majority Op., at 1220. Instead, we are charged with construing a taxing statute most strongly and strictly against the government, and if there is reasonable doubt as to its construction or application to a particular case, that doubt must be resolved in favor of the taxpayer. Section 1928(b)(3) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1928(b)(3); *Commonwealth v. High Welding Co.*, 428 Pa. 545, 239 A.2d 377 (1968). The Taxpayer here makes this argument. Unfortunately, the majority does not acknowledge that such a rule of statutory construction exists.

It is clear from the statute that deductions are contemplated for value distributed outside of the central control computer system. If supported by sufficient proof, deductions can be taken for cash or cash equivalents "paid *manually* or paid out by the slot machine." Section 1103 of the Pennsylvania Race Horse Development and Gaming Act, 4 Pa.C.S. § 1103 (definition of "gross terminal revenue;" emphasis added). Also, deductions can be taken for non-cash personal property distributed to a player as a result of playing a slot machine. *Id.* Manual cash distributions and non-cash personal property distributions, however, cannot be tracked by the central control computer system. The existence of express deductions for these distribu-

tions renders the statute ambiguous. Their existence also supports the reasonable interpretation urged by the Taxpayer.

Regardless of how one feels about gaming, taxpayers should be treated fairly. Because the majority strays from the rules of statutory construction, I must dissent.