IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Greenwood Gaming and                    :
Entertainment, Inc.,                    :
                                        :
                    Petitioner          :
                                        :
        v.                              : No. 609 F.R. 2015
                                        : Submitted: July 27, 2018
Commonwealth of Pennsylvania,           :
                                        :
                    Respondent          :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                         FILED: September 6, 2018


        Before the Court is the application for summary relief filed by the
Commonwealth of Pennsylvania (Commonwealth), Department of Revenue
(Department) to the petition for review filed in our appellate jurisdiction by
Greenwood Gaming and Entertainment, Inc. (Taxpayer) seeking review of the order
of the Board of Finance and Revenue (F&R) that denied Taxpayer's request for a
refund of slot machine taxes. We grant the application and affirm F&R's order.

        The stipulated facts are as follows. Taxpayer is a Pennsylvania
corporation that operates Parx Casino and Racetrack (Casino) pursuant to a Category
1 slot machine license and table game operation certificate issued by the
Pennsylvania Gaming Control Board (Gaming Board). Taxpayer is subject to the
provisions of the Pennsylvania Racehorse Development and Gaming Act (Gaming

Act)[1] including those governing the calculation of gross terminal revenue (GTR)[2] for purposes of calculating the slot machine taxes due.[3]  The amounts at issue in the case

---

[1] 4 Pa. C.S. §§1101-1904.

[2] Section 1103 of the Gaming Act defines GTR as follows:

> The total of:
>
> (1) cash or cash equivalent wagers received by a slot machine minus the total of:
>
> > (i) Cash or cash equivalents paid out to players as a result of playing a slot machine, whether paid manually or paid out by the slot machine.
> >
> > (ii) Cash or cash equivalents paid to purchase annuities to fund prizes payable to players over a period of time as a result of playing a slot machine.
> >
> > (iii) Any personal property distributed to a player as a result of playing a slot machine. This does not include travel expenses, food, refreshments, lodging or services.
>
> (2) cash received as entry fees for slot machine contests or slot machine tournaments.
>
> The term does not include counterfeit cash or tokens; coins or currency of other countries received in slot machines, except to the extent that the coins or currency are readily convertible to cash; or cash taken in a fraudulent act perpetrated against a slot machine licensee for which the licensee is not reimbursed.

4 Pa. C.S. §1103.

> In turn, Section 1103 defines "slot machine," in pertinent part, as follows:
>
> > Any mechanical, electrical or computerized contrivance, terminal, machine or other device approved by the [Board] which, upon insertion of a coin, bill, ticket, token or similar object therein or upon

2

payment of any consideration whatsoever, . . . is available to play or operate, the play or operation of which, whether by reason of skill or application of the element of chance or both:

(A) May deliver or entitle the person or persons playing or operating the contrivance, terminal, machine or other device to receive cash, billets, tickets, tokens or electronic credits to be exchanged for cash or to receive merchandise or anything of value whatsoever, whether the payoff is made automatically from the machine or manually.

(B) May utilize spinning reels or video displays or both.

(C) May or may not dispense coins, tickets or tokens to winning patrons.

(D) May use an electronic credit system for receiving wagers and making payouts.

*Id.*

[3] As this Court has explained, in relevant part:

In casinos operated in . . . Pennsylvania, . . . the [Department] has installed a central control computer system that provides information to the Department about various financial events that occur during the operation of slot machines. According to the Department's regulations, the determination of GTR and the calculation of taxes and other assessments due to the Department based upon slot machine play are determined based on the actual calculations made by the CCS. The [Gaming Act] provides for several deductions from GTR, *i.e.*, for awards such as cash or cash equivalents paid out to patrons, cash paid to purchase annuities to fund prizes, and any personal property, all of which are measured by the CCS. The CCS, however, only measures for the deduction of those payments made to patrons which are made within the algorithm of the slot machine, which results from a patron's physical operation of the slot machine. [Taxpayer] has requested that cash and non-cash prizes that it distributed to casino patrons . . . , but that were not recorded by the CCS, such as promotional items it distributes to patrons who hold Players Cards, be included as allowable deductions.

3

*sub judice* relate to distributions by Taxpayer to patrons that were not accounted for by the Department's central control computer system (CCS)[4] and were not deducted from the GTR on which Taxpayer paid its slot machine taxes.

---

\* \* \*

> The prizes [Taxpayer] seeks to deduct from GTR were distributed to patrons who are said to have won the prizes at issue in one of the following ways: 1) by having their Players Card inserted into a slot machine during a designated period or at a designated time; 2) by having entries deposited in and selected from a drawing drum by a computer using a random number generator; 3) by bringing to a specific place at the casino, usually the Players' Services Desk, a postcard or other mailer the casino had sent to a patron; or 4) by being a specific patron receiving them as part of what the casino would refer to as player development. [Taxpayer] sought a refund of slot machine tax and local assessment fees under the Gaming Act [collected in 2007 and 2008], and filed a petition for review with the Department's Board of Appeals. The Board of Appeals denied [Taxpayer's] petition . . . , finding that the refund sought was not the direct result of a metered win from playing a slot machine. [Taxpayer] timely appealed to [F&R] which denied its appeal.

*Greenwood Gaming and Entertainment, Inc. v. Commonwealth*, 29 A.3d 1215, 1216-17 (Pa. Cmwlth. 2011) (*Greenwood I*), *exceptions overruled*, 45 A.3d 455 (Pa. Cmwlth. 2012) (*en banc*), *rev'd sub nom. Greenwood Gaming and Entertainment, Inc. v. Department of Revenue*, 90 A.3d 699 (Pa. 2014) (*Greenwood II*) (footnotes omitted).

[4] Section 1103 defines "Central control computer," in relevant part, as follows:

> A central site computer controlled by the [Department] and accessible by the [Gaming Board] to which all slot machines communicate for the purpose of auditing capacity, real-time information retrieval of the details of any financial event that occurs in the operation of a slot machine, including, but not limited to, coin in, coin out, ticket in, ticket out, jackpots, machine door openings and power failure, and remote machine activation and disabling of slot machines.

4

In February 2009, Taxpayer filed a refund request with the Department's Board of Appeals challenging the Department's calculation of the GTR tax paid for the years 2007 and 2008 for awards given as promotions. Taxpayer argued that the Department incorrectly excluded deductions from the GTR for prizes awarded outside the algorithm of the slot machines. The Board of Appeals denied the refund request and F&R denied Taxpayer's appeal. This Court affirmed F&R's order and overruled Taxpayer's exceptions, *Greenwood I*, but the Supreme Court reversed our holding with respect to the deductions from the GTR on further appeal and remanded for further consistent proceedings. *Greenwood II*.

On June 18, 2014, Taxpayer filed a petition with the Board of Appeals for the refund of an overpayment of $1,122,654.89 in taxes paid during the period of January 1, 2009, through January 4, 2011. The Board of Appeals dismissed the refund request, and F&R denied a subsequent appeal based on Taxpayer's failure to file the request "within three years of actual payment of the tax" as required by Section 3003.1(a) of the Tax Reform Code of 1971 (Tax Code).[5]

---

4 Pa. C.S. §1103.

[5] Act of March 4, 1971, P.L. 6, *as amended*, added by the Act of July 1, 1985, P.L. 78, 72 P.S. §10003.1. Section 3003.1(a) states:

> (a) For a tax collected by the [Department], a taxpayer who has actually paid tax, interest or penalty to the Commonwealth or to an agent or licensee of the Commonwealth authorized to collect taxes may petition the [Department] for refund or credit of the tax, interest or penalty. Except as otherwise provided by statute, a petition for refund must be made to the department within three years of actual payment of the tax, interest or penalty.

Taxpayer filed a petition for review in this Court, arguing that the imposition of the three-year limitations period on its latest refund request violates its due process rights and that it is inequitable to apply the statutory three-year period in this case. In essence, Taxpayer alleges that this Court's opinion in *Greenwood I* was the controlling law during that three-year period so it would have been futile and improper to seek a refund from the Department's Board of Appeals during that time. Taxpayer contends that such a refund request could have only been filed after the Supreme Court issued its opinion in *Greenwood II* in 2014 reversing our order. Taxpayer acknowledges the case law that precludes the application of equitable considerations in tax refund cases, but asks this Court to reconsider these decisions and to change and/or clarify the law to authorize such equitable considerations. The Commonwealth then filed the instant application for summary relief,[6] asserting that the Board of Appeals was without jurisdiction to entertain Taxpayer's refund request as a matter of law because Taxpayer failed to file the request within the required three-year period and that F&R properly affirmed its order.

As the Supreme Court has explained:

> "[A] voluntary payment of taxes can be subsequently recovered by a taxpayer only as a statute provides." *Calvert* [*Distillers Corp. v. Bd. of Fin. & Revenue*, 103 A.2d 668, 669 (Pa. 1954)]; *Philadelphia Gas Works ex rel. City of Philadelphia v. Com.*, 741 A.2d 841, 846 (Pa. Cmwlth. 1999), *aff'd*, [757 A.2d 360 (Pa. 2000)] (refund

---

[6] Rule 1532(b) of the Pennsylvania Rules of Appellate Procedure states, "At any time after the filing of a petition for review in an appellate or original jurisdiction matter the court may on application enter judgment if the right of the applicant thereto is clear." Pa. R.A.P. 1532(b). "An application for summary relief is to be granted only if there are no material factual disputes and the movant's entitlement to relief is clear. In the determination, the factual averments and the existing record are assessed in the light most favorable to the nonmoving party." *Northwestern Youth Services, Inc. v. Department of Public Welfare*, 66 A.3d 301, 309 n.11 (Pa. 2013) (citations omitted).

of voluntarily paid tax is matter of legislative grace). Where, as here, a statute provides a remedy, the directions of the statute must be strictly pursued to obtain the remedy. 1 Pa. C.S. §1504. The time limitation in a tax statute must be "strictly enforced to prevent any uncertainty in the budgetary planning and fiscal affairs of the Commonwealth." *Philadelphia Gas Works*, 741 A.2d at 846; *Fed. Deposit Ins. Corp. v. Bd. of Fin. & Revenue*, [84 A.2d 495, 498 (Pa. 1951)] ("[N]o doubt the legislature considered that to allow refunds [years after tax was paid] would create great uncertainty in the budgetary planning and fiscal affairs of the Commonwealth."). Compliance with the time limitation in the Tax Code is "an absolute condition to obtaining a refund." *Id. See also Bethlehem Steel Co. v. Bd. of Fin. & Revenue*, [244 A.2d 767 (Pa. 1968)] ("Equitable principles cannot vary the statutory requirement and we lack the power to alter the explicit language of the statute.").

*Mission Funding Alpha v. Commonwealth*, 173 A.3d 748, 762-63 (Pa. 2017).

Based on the foregoing, it is clear that the Department's Board of Appeals did not err in dismissing Taxpayer's refund request that was not submitted "within three years of actual payment of the tax" as required by Section 3003.1(a) of the Tax Code, and F&R did not err in denying Taxpayer's appeal. Taxpayer's failure to file a refund request within the mandatory three-year period extinguished its right to such a refund and neither the Department nor this Court may rely on equitable principles to revive its statutory right to request a refund.[7] Moreover, with

---

[7] *See, e.g.*, *Lopresti v. Workers' Compensation Appeal Board (Taylor Wharton Co.)*, 692 A.2d 629, 631 (Pa. Cmwlth.), *appeal denied*, 701 A.2d 580 (Pa. 1997) ("Claimant contends that the 500-week statute of repose [for filing a petition to reinstate benefits] had not expired because the time period during the pendency of his successful appeal to this Court, a period of one year, nine months, and six days, should be excluded from the running of the statute of repose. In making this argument, Claimant does not cite any cases to support the proposition that the pendency of an appeal tolls the statute of repose upon another action. Nor has this Court's research uncovered any such cases. Furthermore, because Claimant has offered no evidence to establish that Employer should be estopped from asserting the 500-week statute of repose, the only defense available to

respect to Taxpayer's due process claim, "[b]ecause it is a statute of repose, taxpayers' rights to a refund are extinguished and once quashed, due process demands nothing because there are no rights to 'process.'" *DaimlerChrysler Corporation v. Commonwealth*, 885 A.2d 117, 121 (Pa. Cmwlth. 2005), *aff'd*, 927 A.2d 201 (Pa. 2007) (citation and footnote omitted).[8]

---

Claimant, the statute of repose was not tolled by the pendency of a related appeal before this Court.").

[8] Taxpayer's reliance on the concurring opinions of Chief Justice Saylor and Senior Judge Leadbetter in *DaimlerChrysler Corporation* does not support its claim of a due process violation. As the Chief Justice explained:

> In the present case, it seems clear that [the automobile seller] could not sustain a facial due process challenge to Section 3003.1(a). In this regard, the United States Supreme Court has recognized the need for reasonable procedural limitations applicable to tax refund claims—including "relatively short statutes of limitation"—as a means of insuring financial security in relation to state tax schemes. *McKesson Corporation v. Division of Alcoholic Beverages and Tobacco, Department of Business Regulation of Florida*, 496 U.S. 18, 45 [(1990)] (stating, in *dicta*, that enforcement of fairly short limitation periods for tax refund claims is a constitutionally valid means of securing a state's interest in fiscal stability). Thus, the statute is plainly constitutional at least with regard to those categories of claims for which the statute provides a reasonable opportunity to obtain a refund.

927 A.2d at 204 (Saylor, J., concurring). Chief Justice Saylor recognized the facial constitutionality of Section 3003.1(a) in cases such as this case where the taxpayer was aware of the tax liability and had the ability to request a refund during the relevant three-year statutory period. *Id.* He expressed his concern in *DaimlerChrysler Corporation* as limited "to the repurchases [by the automobile seller as required by the Pennsylvania Automobile Lemon Law (Lemon Law), Act of March 28, 1994, P.L. 150, as amended, 73 P.S. §§1951-1963,] that occurred after the expiration of the three-year period as to which there is at least the possibility that [the seller] lacked a reasonable opportunity to obtain a refund [of the sales tax paid at the time of purchase]." *Id.*

Finally, Taxpayer's assertion that filing a timely refund in the instant matter would have subjected it to liability under those sections of the Judicial Code commonly referred to as the Dragonetti Act[9] is specious. By prosecuting the appeals of the Department's prior denial of its refund request in *Greenwood I* and *Greenwood II*, Taxpayer demonstrated its reasonable belief that the Department incorrectly excluded the asserted deductions from the GTR in calculating its tax liability. Such reasonable belief provided Taxpayer with probable cause to file a timely refund request in this case during the pendency of those appeals and such a filing would not support any such liability. *See* Section 8352(1) of the Dragonetti Act, 42 Pa. C.S. §8352(1) ("A person who takes part in the . . . initiation . . . of civil proceedings against another has probable cause for doing so if he reasonably believes in the existence of the facts upon which the claim is based, and . . . reasonably believes that under those facts the claim may be valid under the existing or developing law[.]"); Restatement (Second) of Torts §676 (Am. Law Inst. 1977) ("To subject a person to liability for wrongful civil proceedings, the proceedings must have been initiated . . . primarily for a purpose other than that of securing the proper adjudication of the claim on which they are based."); *id.*, cmt. *c* ("One may believe that his claim is meritorious even though he knows that the decisions in the state do not sustain it if he believes that the law is potentially subject to modification

---

Likewise, Senior Judge Leadbetter acknowledged the facial constitutionality of Section 3003.1(a) in a case such as this, yet "believe[d] the application of the three-year statute of repose in the Lemon Law result[ed] in an unintended and inequitable consequence, but this result must be addressed by the General Assembly, [and] not this Court." 885 A.2d at 122 (Leadbetter, J., concurring). She concluded that, as in this case, "[b]ecause the three-year limitation on filing refund requests is, on its face, both crystal clear and reasonable, this Court must affirm the orders of [F&R]." *Id.*

[9] 42 Pa. C.S. §§8351-8355.

9

and that this case may be a suitable vehicle for producing further development or change.").

Accordingly, we grant the application for summary relief and affirm F&R's order.

_____
MICHAEL H. WOJCIK, Judge

Judge Fizzano Cannon did not participate in the result of the decision in this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Greenwood Gaming and Entertainment, Inc., | : | |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 609 F.R. 2015 |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| | : | |
| Respondent | : | |

# **O R D E R**

AND NOW, this 6th day of September, 2018, the Commonwealth of Pennsylvania's application for summary relief is GRANTED, and the Board of Finance and Revenue's order is AFFIRMED. Unless exceptions are filed within thirty (30) days pursuant to Pa. R.A.P. 1571(i), this Order shall become final.

_____
MICHAEL H. WOJCIK, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Greenwood Gaming and      :
Entertainment, Inc.,      :
               Petitioner      :
     :
             v.      :     No. 609 F.R. 2015
     :     Submitted: July 27, 2018
Commonwealth of Pennsylvania,      :
              Respondent      :

**BEFORE:**   **HONORABLE P. KEVIN BROBSON, Judge**
              **HONORABLE MICHAEL H. WOJCIK, Judge**
              **HONORABLE ELLEN CEISLER, Judge**

*OPINION NOT REPORTED*

**CONCURRING OPINION**
**BY JUDGE BROBSON**                       **FILED: September 6, 2018**

I join in the majority's well-reasoned opinion. In doing so, I recognize that our decision allows the Commonwealth to keep money that Petitioner Greenwood Gaming and Entertainment, Inc. (Taxpayer) paid to the Commonwealth under protest, while its appeal of the methodology that the Commonwealth used to calculate the amount of slot machine tax due made its way through the courts. Accordingly, I would hardly consider what Taxpayer paid to the Commonwealth for tax years 2009 and 2010 a "voluntary payment of taxes." *See* Maj. Op. at 7 (quoting *Mission Funding Alpha v. Commonwealth*, 173 A.3d 748 (Pa. 2017)). In *Greenwood Gaming and Entertainment, Inc. v. Department of Revenue*, 90 A.3d 699 (Pa. 2014) (*Greenwood Gaming I*), the Pennsylvania Supreme Court vindicated Taxpayer's

legal argument and remanded the matter for recalculation of the slot machine tax due for the 2007 and 2008 tax years. The issue before the Court is whether that decision, by itself, entitled Taxpayer to a recalculation or refund of the taxes paid in subsequent years under protest.

I have reviewed Taxpayer's 2009 refund petition, which was the initiating document in *Greenwood Gaming I.* It is clear that the 2009 refund petition sought relief only with respect to the 2007 and 2008 tax years. Taxpayer argues, nonetheless, that its 2009 refund petition should be construed as raising and preserving a refund request for all years thereafter based on the same legal challenge to the Commonwealth's methodology. This Court heard a similar argument recently in *Starwood Airport Realty v. School District of Philadelphia*, 115 A.3d 410 (Pa. Cmwlth. 2015). There, we agreed with a taxpayer that the taxpayer's property assessment appeal for the 2012 tax year operated as an automatic appeal of the 2013 and 2014 tax year assessments under Section 518.1(b) of The General County Assessment Law,[1] which provides, in relevant part:

> If a taxpayer has filed an appeal from an assessment, so long as the appeal is pending before the board or before a court on appeal from the determination of the board, as provided by statute, *the appeal will also be taken as an appeal by the taxpayer on the subject property for any valuation for any assessment subsequent to the filing of such appeal* with the board and prior to the determination of the appeal by the board or the court. This provision shall be applicable to all pending appeals as well as future appeals.

---

[1] Act of May 22, 1933, P.L. 853, added by the Act of December 28, 1955, P.L. 917, *as amended*, 72 P.S. § 5020-518.1(b).

(Emphasis added.)  The General Assembly, however, did not include similar automatic appeal language in Section 3003.1(a) of Tax Reform Code of 1971 (Tax Code).[2]

I must agree with the majority that Taxpayer's remedy for subsequent tax years was a timely refund petition under Section 3003.1(a) of the Tax Code and that Taxpayer failed to file a timely refund petition(s) for the years at issue in this matter, 2009 and 2010.  Because the filing of a refund petition for a specific tax year under Section 3003.1(a) of the Tax Code does not operate as an automatic appeal with respect to subsequent tax years, I am compelled to agree with the majority's disposition of this appeal.

P. KEVIN BROBSON, Judge

---

[2] Act of March 4, 1971, P.L. 6, added by the Act of July 1, 1985, P.L. 78, *as amended*, 72 P.S. § 10003.1(a).