**[J-14A-2024, J-14B-2024 and J-14C-2024] [OAJC: Donohue, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**


| | | |
|---|---|---|
| JAMES AND KAREN PEARLSTEIN, | : | No. 21 MAP 2023 |
| | : | |
| Appellants | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 741 FR |
| | : | 2017 dated February 10, 2023 |
| v. | : | overruling the exceptions and |
| | : | Affirming the August 23, 2017 Order |
| | : | of the Board of Finance of Revenue |
| COMMONWEALTH OF PENNSYLVANIA, | : | at Nos. 1624357, 1624358 |
| | : | |
| Appellee | : | ARGUED:  March 6, 2024 |
| | | |
| REED AND GAIL SLOGOFF, | : | No. 22 MAP 2023 |
| | : | |
| Appellants | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 742 FR |
| | : | 2017 dated February 10, 2023 |
| v. | : | overruling the exceptions and |
| | : | Affirming the August 23, 2017 Order |
| | : | of the Board of Finance of Revenue |
| COMMONWEALTH OF PENNSYLVANIA, | : | at Nos. 1624354, 1624355 |
| | : | |
| Appellee | : | ARGUED:  March 6, 2024 |
| | | |
| ROBERT PEARLSTEIN AND CYNTHIA PEARLSTEIN, | : | No. 23 MAP 2023 |
| | : | |
| | : | Appeal from the Order of the |
| Appellants | : | Commonwealth Court at No. 743 FR |
| | : | 2017 dated February 10, 2023 |
| | : | overruling the exceptions and |
| v. | : | Affirming the August 23, 2017 Order |
| | : | of the Board of Finance of Revenue |
| | : | at Nos. 1624359, 1624360 |
| COMMONWEALTH OF PENNSYLVANIA, | : | |
| | : | ARGUED:  March 6, 2024 |
| Appellee | : | |

<u>**DISSENTING OPINION**</u>

**JUSTICE McCAFFERY**                                    **DECIDED:  September 26, 2024**

Respectfully, I dissent.  Under the Department's own regulations, the option to defer net gains from like-kind exchanges was available to Taxpayers in 2013 and 2014. Thus, I would reverse the Commonwealth Court.

At the outset, we must review the meaning of "income" in the TRC.  Relative to Taxpayers' business transactions, Section 303(a)(3) of the TRC establishes eight classes of income — one of which includes "net gains or income from disposition of property."  72 P.S. § 7303(a)(3).  As the opinion announcing the judgment of the court (OAJC) notes, "[a]t the times relevant to this dispute, there was no exception to the definition of income in the TRC for like-kind exchanges" and "our rules of statutory construction indicate that 'exceptions expressed in a statute shall be construed to exclude all others.'"  OAJC at 31 (*citing* 1 Pa.C.S. § 1924).

In addition to establishing what is, and what is not, income, Section 303(a.1), provides that "[i]ncome shall be computed under the method of accounting on the basis of which the taxpayer regularly computes income in keeping the taxpayer's books," and that "the computation of income shall be made under a method which, in the opinion of the [D]epartment, **clearly reflects income**."  72 P.S. 7303(a.1) (emphasis added). Further, the Department's regulations state that "[a] method of accounting which reflects the consistent application of generally accepted accounting principles in a particular trade or business in accordance with the prevailing conditions of practices in that trade or business **shall be presumed to clearly reflect income**."  61 Pa. Code § 101.2 (emphasis added).

Here, Taxpayers utilized a method of accounting, *i.e.*, the FIT method, which is based on accepted accounting principles and practices, and is used as an accounting

method by enterprises — such as Taxpayers' partnership here — that are engaged in the business or trade of buying, selling, developing, and managing real estate. Unlike the OAJC, I interpret "shall be presumed," in the full context of Section 101.2, to be a mandatory conclusive presumption, rather than a mandatory rebuttable presumption. The Department's regulation sets out the conditions the taxpayer must meet to "clearly reflect income," with the promise that once these parameters are met, the taxpayer is **entitled** to the presumption. There is no provision for the Department to challenge or rebut the presumption. Either the accounting method satisfies the criteria, or it does not. A taxpayer is entitled to presume such a method is acceptable until the Department provides public notice that it is not.

The OAJC suggests that nothing in the language of the above-referenced provision suggests the presumption is not rebuttable, therefore it is. However, I would posit that those who draft statutes and regulations in the Commonwealth understand how to carry out their intentions. For example, the General Assembly knew how to create a rebuttable presumption in the workers' compensation/occupational disease context. In *City of Pittsburgh v. Workers' Compensation Appeal Board*, 67 A.3d 1194, 1204 (Pa. 2013), this Court explained:

> The General Assembly has prescribed mandatory rebuttable presumptions to govern certain issues in worker's compensation cases. For example, in the context of occupational diseases, a claimant initially must prove that he or she is afflicted by one of the enumerated illnesses in Section 108. 77 P.S. § 413.[1]  Once it is

---

[1] It reads:

> If it be shown that the employe, at or immediately before the date of disability, was employed in any occupation or industry in which the occupational disease is a hazard, it shall be presumed that the employe's occupational disease arose out of and in the course of his employment, **but this presumption shall not be conclusive**.

(continued…)

shown that the worker has contracted the occupational disease, a rebuttable presumption arises that the illness was contracted in the course of employment. Thereafter, the evidentiary burden shifts to the employer to rebut the presumption with substantial, competent evidence.

*Id.* at 1204 (internal citations omitted). Where, as here, Section 101.2 does not include a provision similar to Section 108 of the Workers' Compensation Act that plainly allows the subject presumption, once established, to be rebutted, I, unlike the OAJC, do not read it in. To the contrary, I believe that once Taxpayers satisfied the criteria of Section 101.2, the Department was required to presume their method of accounting as **clearly reflecting income**. Because the Commonwealth Court's decision was premised squarely on the conclusion that Taxpayers' accounting method **did not** clearly reflect income, I believe the lower court's order must be reversed.

At the very least, the status of the presumption in Section 101.2 is ambiguous. And, such ambiguity must be resolved in Taxpayers' favor, per the requirement of 1 Pa.C.S. § 1928(b)(3) (any ambiguity in provisions imposing taxes must be construed in favor of the taxpayer). See also *Greenwood Gaming and Entertainment, Inc. v. Commonwealth*, *Department of Revenue*, 90 A.3d 699, 707 (Pa. 2014) (any ambiguity in provisions imposing a tax must be construed in favor of the taxpayer and against the taxing authority; exemptions from taxation are strictly construed against the taxpayer) (internal citation omitted). Here, the ambiguity relates to the imposition of tax, not an exemption from tax. At some point, tax will be due. The like-kind exchange provision merely allows for its **deferral**. Thus, any resulting ambiguity must be construed in Taxpayers' favor and against the Department.

Adding to the ambiguity is the Department's own bulletin which, for 11 years, asserted "the Department has determined that gain or loss on like-kind exchanges does

---

Section 301(e) of the Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710; 77 P.S. § 413 (emphasis added).

not have to be recognized at the time of the exchange if a taxpayer's method of accounting permits the deferral of gain from a like-kind exchange." Bulletin 2006-07 at 3. The Department cannot disavow the plain language of its bulletin. Even if we were to assume the language of the bulletin was an error, the fact remains it went unchanged for **11 years**. The bulletin was offered as guidance from the Department to the taxpaying public on how to interpret an ambiguous statute. As Judge Crompton, and later, Judge McCullough, noted in their respective Commonwealth Court dissents, "the Department opined in the [b]ulletin that the deferral of income on like-kind exchanges was permitted," and "Taxpayers [were] entitled to the benefit of the Department's opinion at the time." *Pearlstein v. Commonwealth*, 267 A.3d 593, 609 (Pa. Cmwlth. 2021) (*Pearlstein I*) (Crompton, J., dissenting); *Pearlstein v. Commonwealth*, 291 A.3d 923, 927 (Pa. Cmwlth. 2023) (*Pearlstein II*) (McCullough, J., dissenting).

At its core, this case is about the acceptability of Taxpayers' chosen method of accounting — vis-à-vis the TRC. In this regard, I see no reason why that method, and the resulting deferral on net gain on the like-kind exchanges should have been unacceptable to the Department at the time. To the extent the Department and the OAJC express concern that Taxpayers effectively imported exceptions from the federal Internal Revenue Code into Pennsylvania tax law, I note that a former member of the Board of Finance and Revenue suggested that in addition to certain federal income tax principles being explicitly incorporated into the TRC anyway, this Court, and the Department, itself, have incorporated federal tax principles into Pennsylvania tax law, without explicit statutory authorization from the General Assembly. *See Henry 2005 Family Trust Decision and Order*, July 22, 2015, BF&R Docket No. 1400289 (Dissent of R. Scott Shearer at 11-12).

I agree with the OAJC that it is not within this Court's authority to render a decision based purely on policy, and that is not what I propose to do here. However, I think it is worth noting that the deferral of income on like-kind exchanges makes sense from a policy standpoint, which is more reason I believe the practice was intended to be available to qualifying taxpayers. As Taxpayers note, the deferral of tax on net gains from like-kind exchanges encourages investment in the real estate market. The corollary is that like-kind exchanges promote **improvements** to property as well. This, in turn, benefits the economy by producing a stock of quality, affordable housing, creating jobs, and **increasing tax revenue**. Thus, there were, and are, good reasons for, and substantial societal benefits from, incentivizing property investment. Tax deferral on the net gains is critical for promoting this kind of investment because the investors receive no cash "in-hand" at the time of the exchange. In other words, they do not realize income until they sell the subject property(ies) as a traditional "cash-out" sale. I believe this is the policy preference that led the General Assembly, in 2022, to **clarify** what it always intended to be true — that the TRC provides tax deferral on net gains from like-kind exchanges.

Based on the foregoing reasons, I would reverse the order of the Commonwealth Court and remand to it with instructions to remand to the Board of Finance and Revenue for a further remand to the department to strike the entirety of its tax assessment against Taxpayers in this matter.

Chief Justice Todd joins this dissenting opinion.