IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Greenwood Gaming & : 
Entertainment, Inc., : 
                Petitioner : 
        : 
      v. :   No. 531 F.R. 2017
        :   ARGUED:  April 10, 2019
Commonwealth of Pennsylvania, : 
           Respondent : 

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
             HONORABLE ROBERT SIMPSON, Judge[1]
             HONORABLE P. KEVIN BROBSON, Judge
             HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE ANNE E. COVEY, Judge
             HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                     FILED:  October 16, 2019

      Petitioner, Greenwood Gaming & Entertainment, Inc. (Greenwood), petitions this Court for review of the Pennsylvania Board of Finance and Revenue's denial of a tax refund request.  The issue is one of statutory construction under the Pennsylvania Race Horse Development and Gaming Act (Gaming Act).[2]  After thorough review, we reverse.

---

[1] This matter was assigned to this panel before September 1, 2019, when Judge Simpson assumed the status of senior judge.

[2] 4 Pa. C.S. §§ 1101 – 1904.

# I. Background

Greenwood operates Parx Casino. Greenwood distributes complimentary event tickets to patrons as a result of their table game and slot machine play. For taxing purposes, the Commonwealth of Pennsylvania (Commonwealth) includes the costs of those event tickets in Greenwood's gross table game revenue and gross terminal game revenue (jointly, gross table and slot revenues). Greenwood contends it is entitled to deduct the costs of event tickets from its gross table and slot revenues, and thus avoid paying taxes on the ticket costs.

The Gaming Act defines "Gross table game revenue" as:

> Cash or cash equivalents received in the playing of a table game minus . . . [t]he actual cost paid by the certificate holder for any personal property distributed to a player as a result of playing a table game. This does not include travel expenses, food, refreshments, lodging or services.

4 Pa. C.S. § 1103, *"Gross table game revenue"* (1)(iii). Similarly, the Gaming Act defines "Gross terminal revenue" as:

> Cash or cash equivalents received by a slot machine minus … [a]ny personal property distributed to a player as a result of playing a slot machine. This does not include travel expenses, food, refreshments, lodging or services.

*Id.*, *"Gross terminal revenue"* (1)(iii). Thus, a casino may deduct patrons' winnings from its gross table and slot revenues, but may *not* deduct "travel expenses, food, refreshments, lodging or services" (commonly known as "comps") it provides to patrons as a result of their table game or slot machine play.

Here, the dispute hinges on whether the event tickets Greenwood provides to patrons are "services" under the Gaming Act. If they are "services," their cost is included in Greenwood's gross table and slot revenues for tax purposes. If not, the cost is deductible by Greenwood from its gross table and slot revenues.

2

## II. Issue

On review,[3] Greenwood argues event tickets are not among the enumerated comps which are excluded from deductible costs under the Gaming Act. The Commonwealth counters that event tickets, when distributed to gaming patrons based on their gaming play, constitute "services," and as such, they are included in gross table and slot revenues for tax purposes under the Gaming Act.

The Commonwealth argues an event ticket merely confers a right of admittance, and it is the event experience for which Greenwood pays and which its patrons receive. The Commonwealth asserts that event performances are clearly "services." Therefore, Greenwood must include in its gross table and slot revenues the cost of event tickets given to patrons, separate from their winnings, as a result of their table game and slot machine play.

Greenwood counters that neither the tickets nor the event admittances they confer are "services" within the meaning of the Gaming Act. Greenwood argues that at best, the meaning of "services" is ambiguous as applied to event tickets. Therefore, under principles of statutory construction, Greenwood contends it may properly deduct event ticket costs from its gross table and slot revenues.

## III. Discussion

Pennsylvania's rule of statutory construction provides, in pertinent part: "All provisions of a statute of the classes hereafter enumerated shall be strictly construed: . . . (3) Provisions imposing taxes . . . ." 1 Pa. C.S. § 1928(b)(3). Moreover, our Supreme Court has specifically held that the definitions provided in the Gaming Act,

---

[3] This Court's review of a decision of the Pennsylvania Board of Finance and Revenue is *de novo* and is based either on stipulated facts or a record created before the Court. *Dechert LLP v. Commonwealth*, 922 A.2d 87 (Pa. Cmwlth. 2007). Here, the parties filed a stipulation of facts dated September 12, 2018.

3

4 Pa. C.S. § 1103, must be strictly construed in the taxpayer's favor. *Greenwood Gaming and Entm't, Inc. v. Pa. Dep't of Revenue*, 90 A.3d 699 (Pa. 2014).

The Gaming Act does not define what constitutes a "service." However, pertinent authority suggests a ticket conferring a right of admission to an event is intangible personal property, and as such, neither a good nor a service.

In *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425 (Pa. 2004) (*Yocca II*), Pittsburgh Steelers fans had an opportunity to buy "stadium builder licenses" during construction of the team's new stadium. Essentially, a license entitled the purchaser to a future agreement to buy a season ticket for a specified seat every year for the duration of the team's use of the new stadium. When the seats were assigned to licensees after completion of construction, however, they were not in locations as favorable as suggested in the brochure advertising the licenses. License purchasers sued under, *inter alia*, the Unfair Trade Practices and Consumer Protection Law (UTPCPL),[4] 73 P.S. § 201-1 – 201-9.3.

The trial court found the plaintiffs could not maintain their UTPCPL claim. As provided in Section 9.2, the UTPCPL applies only to purchases of "goods or services." 73 P.S. § 201-9.2. According to the trial court, the licenses were neither goods nor services.

This Court disagreed and found the licenses were equivalent to option agreements to keep open the purchasers' rights to enter subsequent agreements to buy season tickets. As such, this Court theorized that the licenses might conceivably be "services" under the UTPCPL. *Yocca v. Pittsburgh Steelers Sports, Inc.*, 806 A.2d 936, 947 (Pa. Cmwlth. 2002) (*Yocca I*). However, in a dissenting opinion, Judge

---

[4] Act of December 17, 1968, P.L. 1224, *as amended*.

Cohn (now Judge Cohn Jubelirer), agreeing with the trial court, argued the licenses were intangible property rights, and as such, were neither goods nor services. *Id.*

On further appeal, our Supreme Court did not decide that issue, finding that the plaintiffs failed to state an UTPCPL claim in any event. However, citing the trial court and this Court's majority and dissenting opinions, our Supreme Court observed: "As is clear from the lower courts' discussion and findings with respect to this claim, *the law is not completely settled* as to whether [the license] constitutes either a good or a service." *Yocca II*, 854 A.2d at 438 (emphasis added).

Here, the event tickets are analogous to the season tickets in *Yocca I* and *II*. A license to enter into a future ticket purchase agreement is a step removed from the ticket itself. However, the same analysis applies, as both the license and the ticket convey intangible rights.

The Commonwealth itself concedes, and in fact argues at length, that the event tickets at issue represent and confer "intangible rights." Resp.'s Br. at 14-21. The Commonwealth correctly observes that an event ticket is a "general intangible" under Article Nine of the Uniform Commercial Code (UCC). *See* 13 Pa. C.S. § 9-102, *"General intangible."* Resp.'s Br. at 17 (quoting *Klingner v. Pocono Int'l Raceway, Inc.*, 433 A.2d 1357, 1361-62 (Pa. Super. 1981) (ticket purchaser receives a general intangible in the nature of a license to view a performance)). However, nothing in the UCC definition includes a "service" in the definition of a "general intangible."[5]

Relying on federal authorities, the Commonwealth also argues the events themselves are services. However, the cited federal provisions are not tax laws. We

---

[5] Under the UCC, a "[g]eneral intangible" is:

are not persuaded that federal definitions of "services," especially in non-tax contexts, should carry over into Pennsylvania tax law. The Commonwealth cites no Pennsylvania tax provision incorporating any federal definition of "services."

Moreover, even assuming events constitute services, Greenwood is not the service provider; the performers provide the service at an event. The ticket merely conveys the right of attendance – hence its definition as a general intangible.

Admittedly, it seems logical that the legislature may have intended to except only patrons' winnings from gross table and slot revenues. Inasmuch as other comps are not deductible from gross revenue, there is also some logical appeal to the Commonwealth's implicit argument that event tickets should be treated like other comps and should be included in gross revenues.

However, had the legislature intended to limit deductions from gross revenues solely to patrons' winnings, it could have done so expressly and thereby eliminated deductions for all comps. Instead, it authorized deductions from gross table and slot

---

> [a]ny personal property, including things in action, *other than* accounts, chattel paper, commercial tort claims, deposit accounts, documents, *goods*, instruments, investment property, letter-of-credit rights, letters of credit, money and oil, gas or other minerals before extraction. The term includes payment intangibles and software.

13 Pa. C.S. § 9-102, *"General intangible"* (emphasis added.) Conversely, "[g]oods" are "things that are movable when a security interest attaches." *Id.*, *"Goods."* "Goods" expressly do *not* include

> accounts, chattel paper, commercial tort claims, deposit accounts, documents, *general intangibles*, instruments, investment property, letter-of- credit rights, letters of credit, money or oil, gas or other minerals before extraction.

*Id.* (emphasis added.) While "general intangibles" and "goods" are mutually exclusive under the UCC, neither definition includes, excludes, or otherwise mentions "services." Therefore, classifying an event ticket as a general intangible for tax law purposes based on the UCC definition does not advance the Commonwealth's argument that the ticket is a service.

revenues for all distributions to patrons (as winnings or otherwise) as a result of playing table games and slot machines; then, it excepted from those deductions only specific categories of comps.

Finally, to the extent it is unclear under the current language of the Gaming Act whether event tickets constitute "services" included in gross table and slot revenues, the term "services" is ambiguous. *Marshall v. Commonwealth*, 197 A.3d 294 (Pa. Cmwlth. 2018). Because ambiguities in taxing statutes are construed in favor of the taxpayer, 1 Pa. C.S. § 1928(b)(3), we find Greenwood is entitled to the deductions it seeks for the comps it distributes to patrons in the form of event tickets, unless or until the legislature revises and clarifies the pertinent provision of the Gaming Act.

## IV. <u>Conclusion</u>

Based on the foregoing discussion, we conclude event tickets do not constitute "services" under the Gaming Act and are deductible from gross table and slot revenues. Any necessary clarification must come from the legislature. We therefore reverse the Pennsylvania Board of Finance and Revenue's denial of Greenwood's tax refund request.

_____
ELLEN CEISLER, Judge

7

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Greenwood Gaming             :
Entertainment, Inc.,             :
            Petitioner       :
            :
    v.             :   No. 531 F.R. 2017
            :
Commonwealth of Pennsylvania,    :
          Respondent     :

# **O R D E R**

AND NOW, this 16th day of October, 2019, the order of the Pennsylvania Board of Finance and Revenue, denying the tax refund request of Greenwood Gaming & Entertainment, Inc., is REVERSED. Unless exceptions are filed within 30 days pursuant to Pa. R.A.P. 1571(i), this order shall become final.

_____
ELLEN CEISLER, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Greenwood Gaming & Entertainment, Inc., | : | |
| | : | |
| Petitioner | : | |
| | : | No. 531 F.R. 2017 |
| v. | : | Argued:  April 10, 2019 |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Respondent | : | |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
HONORABLE ROBERT SIMPSON, Judge
HONORABLE P. KEVIN BROBSON, Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE ELLEN CEISLER, Judge

**DISSENTING OPINION**
**BY JUDGE SIMPSON**            **FILED:  October 16, 2019**

I respectfully dissent.  To avoid an unreasonable result, I would affirm the decision of the Board of Finance and Revenue (F&R), thereby denying Greenwood Gaming & Entertainment, Inc.'s (Greenwood's) 2014 tax year refund pertaining to the cost of event tickets.

In this case, we interpret part of the statutory language defining "Gross Terminal Revenue" (GTR) and "Gross Table Game Revenue" (GTGR) for purposes of calculating taxes, as defined in the Pennsylvania Race Horse Development and Gaming Act (Gaming Act).[1]  As with any question of statutory interpretation, our

---

[1] 4 Pa. C.S. §§1101-1904.  The Gaming Act defines these terms as follows:

**'Gross table game revenue.'** The total of:

(1) <u>Cash or cash equivalents received in the playing of a table game minus the total of</u>:

(i) Cash or cash equivalents paid to players as a result of playing a table game.

(ii) Cash or cash equivalents paid to purchase annuities to fund prizes payable to players over a period of time as a result of playing a table game.

(iii) <u>The actual cost paid by the certificate holder for any personal property distributed to a player as a result of playing a table game. This does not include</u> travel expenses, food, refreshments, lodging or <u>services</u>.

(2) Contest or tournament fees or payments, including entry fees, buy-ins, re-buys and administrative fees, imposed by a certificate holder to participate in a table game contest or tournament, less cash paid or actual cost paid by a certificate holder for prizes awarded to the contest or tournament winners.

(3) The total amount of the rake collected by a certificate holder.

The term does not include counterfeit cash or chips; coins or currency of other countries received in the playing of a table game, except to the extent that the coins or currency are readily convertible to cash; or cash taken in a fraudulent act perpetrated against a certificate holder for which the certificate holder is not reimbursed.

**'Gross terminal revenue.'** The total of:

(1) <u>cash or cash equivalent wagers received by a slot machine minus the total of</u>:

(i) Cash or cash equivalents paid out to players as a result of playing a slot machine, whether paid manually or paid out by the slot machine.

(ii) Cash or cash equivalents paid to purchase annuities to fund prizes payable to players over a period of time as a result of playing a slot machine.

standard of review is *de novo*, and our scope of review is plenary. <u>Greenwood Gaming & Entertainment, Inc. v. Dep't of Revenue (DOR)</u>, 90 A.3d 699 (Pa. 2014) (<u>Greenwood v. DOR</u>). In interpreting a statute, our primary goal is to ascertain and effectuate the intention of the General Assembly. <u>Id.</u> at 710 (citing 1 Pa. C.S. §1921). When the words of a statute are clear and free from all ambiguity, the letter is not to be disregarded under the pretext of pursuing its spirit. <u>Id.</u> Additionally, we construe every statute, if possible, to give effect to all of its provisions. <u>Id.</u>

For the definitions of both GTR and GTGR, there is a personal property distribution deduction, but that deduction is modified by the so-called "comp exclusion," which removes from the deduction the actual costs paid for "travel expenses, food, refreshments, lodging or services." 4 Pa. C.S. §1103.

The personal property distribution subsections of the definitions of GTR and GTGR do not expressly address treatment of tickets, tokens, passes, or

---

(iii) <u>Any personal property distributed to a player as a result of playing a slot machine. This does not include</u> travel expenses, food, refreshments, lodging or <u>services</u>.

(2) cash received as entry fees for slot machine contests or slot machine tournaments.

The term does not include counterfeit cash or tokens; coins or currency of other countries received in slot machines, except to the extent that the coins or currency are readily convertible to cash; or cash taken in a fraudulent act perpetrated against a slot machine licensee for which the licensee is not reimbursed.

4 Pa. C.S. §1103 (emphasis added).

vouchers. Such items have some value and constitute personal property on their own, but their value and nature may be substantially linked to the ultimate object or the underlying redeemable thing. In the absence of express treatment of tickets and ticket-like distributions, and in the absence of a definition of "services" as used in the "comp exclusion," the personal property distribution deduction and the "comp exclusion" are ambiguous.

Given that ambiguity, the language should be interpreted strictly in favor of Greenwood as the taxpayer. Greenwood v. DOR.

"Of equal importance [however,] is the presumption that the General Assembly does not intend a result that is absurd … or unreasonable [in construing an ambiguous taxing statute]." Triumph Hosiery Mills, Inc. v. Com., 364 A.2d 919, 921 (Pa. 1976) (citing 1 Pa. C.S. §1922(1)) (emphasis added). I diverge from the majority opinion to the extent it cites only the taxpayer-friendly strict interpretation analysis, without reference to the equally important unreasonable result approach to statutory construction of a taxing statute.

The majority concludes that a ticket conferring a right of admission to an event is intangible personal property, and as such, neither a good nor a service. However, I am persuaded by the Commonwealth's argument that the *underlying events* are services according to the common and approved usage of that term. Thus, "**service**" is commonly defined as "**3**. The act of doing something useful for a person or company, usu. for a fee <your services were no longer required>. … **5**. An

intangible commodity in the form of human effort, such as labor, skill, or advice <contract for services>." Black's Law Dictionary 1491 (9th ed. 2009).

Tickets, tokens, passes and vouchers are personal property that have similar characteristics. Ticket-like items are small, easily transportable and transferrable, and they represent permission to access certain areas, events, services or other things. In the context of the present case, the primary value and utility of the event tickets is permission to the holder to enter into an area, occupy a certain place at a certain time, and view a skilled performance.

However, the "comp exclusion" removes from the personal property distribution deduction the actual cost paid for "travel expenses, food, refreshments, lodging or services." 4 Pa. C.S. §1103 (GTR)(1)(iii), (GTGR)(1)(iii); see Greenwood v. DOR, 90 A.3d at 714. Clearly, a casino could not subtract from taxable GTR and GTGR the value of certain "comps," such as free drinks and lodging. See Greenwood v. DOR, 90 A.3d at 714. This reflects a legislative policy judgment that taxpayers should not foot these types of promotional expenses by having them deducted from money otherwise taxable by the Commonwealth. See id. at 716 (Castille, C.J., dissenting).

Given that the costs of certain types of "comps" are not deductible when supplied *directly*, there is no obvious reason why a casino should be able to deduct the costs paid for the same purposes through the *indirect* operation of a pre-paid ticket, token, pass or voucher. All these ticket-like distributions can facilitate the provision of things carved out by the "comp exclusion." In this regard, it is useful

to observe that the "comp exclusion" does not expressly differentiate between the direct and indirect provision of the excluded things.

In light of the foregoing discussion, I would conclude that when tickets or ticket-like distributions facilitate provision of things or services, the costs are not deductible where the direct provision of the things or services would not be deductible under the "comp exclusion." Any other conclusion would be unreasonable. Triumph Hosiery Mills.

Since the direct provision of "services" is removed by the "comp exclusion" from the personal property distribution deduction, and the performance at the ticketed events qualifies as a skilled "service" under the common and approved usage of that term, I would hold that the cost of the event tickets here are not deductible from taxable GTR and GTGR. Accordingly, I would affirm the order of F&R, thereby denying Greenwood's 2014 tax year refund request pertaining to the cost of event tickets.

_____
ROBERT SIMPSON, Judge

Judge Covey joins in the Dissenting Opinion.